FILED

2010 JUN 22  AM 10: 05

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY  DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dara Billing, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>        vs.<br><br>CSA - Credit Solutions of America, Inc., d.b.a. Credit Solutions of America Inc., d.b.a. Credit Solutions,<br><br>                                    Defendant. | CASE NO. 10-cv-0108 BEN (NLS)<br><br>ORDER GRANTING TRANSFER TO THE NORTHERN DISTRICT OF TEXAS<br><br>[Docket No. 10] |

Currently before this Court is a Motion to Dismiss for Improper Venue, or Alternatively, for Transfer to the Northern District of Texas ("Motion"), filed by Defendant in the above-captioned case. (Docket No. 10.)  Plaintiff filed an opposition, and Defendant filed a reply.  The Court finds the Motion suitable for disposition on the papers, without oral argument, pursuant to Local Civil Rule 7.1.d.  For the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's Motion and orders the case transferred to the Northern District of Texas.

## BACKGROUND

### A.    This Action

This action arises from alleged misrepresentations made by Defendant in the marketing and sale of its consumer debt relief program ("Program").  Defendant is the operator of the Program and is located in Richardson, Texas, i.e., within the jurisdiction of the Northern District of Texas.  (First

1   Am. Compl., ¶ 19.) Plaintiff is a consumer and participant in the Program and resides in San Diego,

2   California, i.e., within the jurisdiction of the Southern District of California. (First Am. Compl., ¶ 17.)

3   Plaintiff asserts her claims on behalf of herself and all similarly situated individuals in California.

4   (First Am. Compl., ¶ 67.)

5           On January 14, 2010, Plaintiff initiated this action against Defendant, alleging causes of action

6   for, among other things, violation of the Credit Repair Organizations Act, 15 U.S.C. § 1678, *et seq.*,

7   and related California state law claims. This Court has original jurisdiction based on the Class Action

8   Fairness Act, 28 U.S.C. §§ 1332(d), 1453, and because certain claims arise under federal law. The

9   Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

10          According to Plaintiff, on or around April 2008,[1] Plaintiff contacted Defendant after viewing

11  Defendant's website advertising debt relief. (First Am. Compl., ¶¶ 35-36.) On or around April 2008,

12  Plaintiff agreed to Defendant's standard agreement. (First Am. Compl., ¶ 44.) The Agreement

13  contained a forum selection clause stating the venue of any dispute regarding the Agreement "shall be

14  in the county and city of Dallas, Texas." (*Id.*, ¶ 11.)

15          **B.      Similar Pending Class Actions**

16          On November 8, 2007, a different individual plaintiff filed a similar class action against

17  Defendant, but within the United States District Court for the Western District of Washington, Seattle

18  Division. (Caruso Decl., Ex. 2.) That case is titled *McDaniel v. CSA - Credit Solutions of America,*

19  *Inc.*, Case No. 07-cv-01815, the Honorable John C. Coughenour presiding. Similar to this case, the

20  *McDaniel* case alleges misrepresentations concerning the Program and asserts claims based on, among

21  other things, violations of the Credit Repair Organizations Act and related Washington state law

22  claims. Similar to this case, Defendant filed a motion to dismiss for improper venue, or alternatively,

23  for judgment on the pleadings. The court granted the motion to transfer venue and transferred the

24  action to the Northern District of Texas. (Caruso Decl., Ex. 3.)

25          On October 10, 2008, yet a third individual plaintiff filed a class action against Defendant, this

26  time in the United States District Court for the Eastern District of Virginia, Richmond Division, titled

27  *Lamb v. Credit Solutions of America, Inc.*, Case No. 08-cv-00654, the Honorable Richard L. Williams

28

---

[1] The Court notes the Complaint alleges events occurring in 2008, while the Agreement itself suggests the events occurred in 2007. (Caruso Decl., Ex. 1.)

1  presiding. (Caruso Decl., Ex. 4.) The *Lamb* case also alleges misrepresentations concerning the
2  Program and asserts claims based on, among other things, a violation of the Credit Repair
3  Organizations Act and related Virginia state law claims. As in this case and *McDaniel*, Defendant
4  filed a motion to dismiss for improper venue or, in the alternative, motion to transfer to the Northern
5  District of Texas. The court granted the motion to transfer venue, transferred the action to the
6  Northern District of Texas, and recommended that the case be consolidated with *McDaniel*.

7  Most recently, plaintiffs in *Moon v. CSA-Credit Solutions of America, Inc.,* filed a class action
8  alleging similar claims against Defendant based on alleged violations of the Credit Repair
9  Organizations Act and related Georgia state law claims. [Reply, Ex. 1.] On September 30, 2009, the
10 district court in Georgia granted Defendant's motion to dismiss, finding that the claims asserted therein
11 were the subject of a valid forum selection clause that identified "the city and county of Dallas, Texas
12 as the sole proper venue." [Reply, Ex. 2.][2]

13                                    **DISCUSSION**

14 **I.      Enforcement of the Forum Selection Clause is Appropriate**

15            Defendant moves to dismiss or transfer the action to a different venue based on a forum
16 selection clause. Federal law governs the validity of a forum selection clause. *Manetti-Farrow, Inc.*
17 *v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir. 1988). The enforceability of a forum selection
18 clause is governed by the United States Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore*
19 *Co.,* 407 U.S. 1 (1972), which held that a forum selection clause is prima facie valid and should only
20 be set aside if the challenging party can show enforcement would be "unreasonable under the
21 circumstances." *Id.* at 10. The Supreme Court has made clear that the "party seeking to escape his
22 contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient
23 that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for
24 concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Id.* at 17-
25 18, overruled in part on other grounds by *Powerex Corp. v. Reliant Energy Servs., Inc.,* 551 U.S. 224
26 (2007). The Ninth Circuit recognizes the following three factors as relevant to determining whether

27

28            [2] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the filing of the
   *Moon* complaint and order.

                                          - 3 -

enforcement of a forum selection clause would be unreasonable:

> (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought.

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).

The forum selection clause in this case provides,

> In the event of any dispute regarding this AGREEMENT, including but not limited to service fees and costs, CLIENT and COMPANY agree that venue of resolution shall be in the county and city of Dallas, Texas.

(Caruso Decl., Ex. 1, ¶ 11.) Defendant argues the clause bars Plaintiff's suit in this Court; Plaintiff argues enforcement of the clause would be unreasonable.

### A.     The Clause is Not the Product of Fraud or Overreaching

The fact that the agreement was a form contract does not render the terms fraudulent or the product of overreaching. *Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585, 595 (1991). Plaintiff must show that the clause itself, and not just the contract, was the product of fraud or coercion. *Scherk v. Alberto-Culver, Co.*, 417 U.S. 506, 519 (1974). Here, Plaintiff admits she agreed to the Agreement after reviewing Defendant's website and speaking with Defendant's representative by phone. (First Am. Compl., ¶ ¶ 35-44; see also Opp. [Docket 19], fn 3.) In her declaration, Plaintiff has not explained what, if any, misrepresentations were made in connection with the forum selection clause or how Plaintiff was otherwise coerced to agree with the clause. Failure to provide specific notice of the forum selection clause, even if true, is also not fatal to enforcement. *Schute*, 499 U.S. at 595.

Plaintiff also argues her claims fall outside of the scope of the forum selection clause. Plaintiff claims the word "regarding" should be interpreted to include only claims relating to the interpretation of the contract. However, the plain language of the clause, in particular the non-exclusive language "including but not limited to," demonstrates the clause encompasses not just claims involving the interpretation of the Agreement but also claims arising from the Agreement and the parties' conduct thereunder. Additionally, where, as here, a plaintiff's tort claim arises from a contractual relationship such that the claim is intertwined with the contract, a forum selection clause will apply to the plaintiff's tort claim. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514

1  (9th Cir. 1988).   In light of the above, the Court finds the forum selection clause encompasses the

2  claims in this case and was not a product of fraud or overreaching.

3          **B.**      **Enforcement of the Clause Will Still Allow Plaintiff Her Day in Court**

4          The inconvenience of traveling to a different state is not enough to overcome the presumptive

5  validity and enforcement of a forum selection clause.  *Pelleport Investors, Inc v. Budco Quality*

6  *Theaters, Inc.,* 741 F.2d 273, 281 (9th Cir. 1984) (travel from east coast to California is not too

7  inconvenient).  This is especially true where, as here, actions with substantially similar claims and

8  involving the same defendant as this case are already pending in the selected forum.  Although Plaintiff

9  suggests her counsel will not represent her if the case is transferred to Texas (Billing Decl., ¶ 26),

10  Plaintiff has not adequately shown that she would be unable to retain new counsel in Texas.

11  Accordingly, the Court finds enforcement of the forum selection clause will still allow Plaintiff her

12  day in court.

13          **C.**      **California's Public Policy Does Not Render the Clause Unenforceable**

14          Lastly, the Court finds public policy does not render the clause unenforceable.  There is no

15  reason to believe that Texas courts will not or cannot entertain Plaintiff's choice of law arguments or

16  that they cannot apply California law, if it is determined that California law governs.  The only issue

17  relevant here is whether California has a public policy that is threatened by the Agreement's forum

18  selection clause.  In light of public policy encouraging enforcement of these clauses and the substantial

19  overlap between this case and the cases already pending in Texas, the Court finds that California

20  public policy is not threatened by the forum selection clause.

21          In light of the above, the Court finds that enforcement of the Agreement's forum selection

22  clause is appropriate.

23  **II.**    **The Interests of Justice Support Transfer Pursuant to 28 U.S.C. § 1406(a)**

24          "The district court of a district in which is filed a case laying in venue in the wrong division

25  or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division

26  in which it could have been brought." 28 U.S.C. § 1406(a).  Where venue is proper in another district,

27  courts prefer to transfer the action, rather than dismiss the action.  *Goldlawr, Inc. v. Heiman*, 369 U.S.

28  463, 466-67 (1962); *Abrams Shell v. Shell Oil Co.,* 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001).

- 5 -

10cv0108

1    Transfer is appropriate if the action "could have been brought" in the transferee court and if such

2    transfer is "in the interest of justice."   *See* 28 U.S.C. § 1406(a); *Goodyear Tire & Rubber Co. v.*

3    *McDonnell Douglass Corp.,* 820 F. Supp. 503, 506 (C.D. Cal. 1992).

4              Where an action "could have been brought" is interpreted to mean that the proposed

5    transferee court must have subject matter jurisdiction, proper venue, and personal jurisdiction. *Shapiro*

6    *v. Bonanza Hotel Co.* 185 F.2d 777, 780 (9th Cir. 1950) (interpreting similar language). The Northern

7    District of Texas would have subject matter jurisdiction over Plaintiff's claims, as there is both federal

8    question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332(d).

9    Venue in the Northern District of Texas is proper under 28 U.S.C. § 1391(b).

10             "Where a jurisdiction is not founded solely on diversity of citizenship may...be
            brought in (1) a judicial district where any defendant resides, if all defendants reside
11          in the same State, (2) a judicial district in which a substantial part of the events or
            omissions giving rise to the claim occurred...or (3) a judicial district in which any
12          defendant may be found, if there is no district in which the action may otherwise be
            brought"

13
     28 U.S.C. § 1391(b). Because Defendant resides in the Northern District of Texas, all defendants
14
     reside in the state of Texas, and, therefore, venue is proper in the Northern District of Texas.
15
     Moreover, the Northern District of Texas would have personal jurisdiction over the parties because
16
     Defendant is headquartered within the jurisdiction of the Northern District of Texas and the parties
17
     have consented to venue in those courts pursuant to their Agreement. *Abrams Shell*, 165 F.Supp.2d
18
     at 1104, fn. 3 (recognizing consent as a traditional basis for specific personal jurisdiction); *see also*
19
     *Hoffman v. Blaski*, 363 U.S. 335 (1960) (if a transferee court is a court in which the plaintiff might
20
     have filed its suit, the action "might have been brought" there). Accordingly, the Court finds that the
21
     action could have been brought in the Northern District of Texas.
22
              The remaining issue is whether transfer would serve the interests of justice.  28 U.S.C. §
23
     1406(a). Factors relevant to "the interest of justice" determination under Section 1406(a) are the same
24
     as those applicable to Section 1404(a). *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n. 5 (4th
25
     Cir. 1993).  Section 1404(a) provides, in pertinent part, that "[f]or the convenience of parties and
26
     witnesses, in the interest of justice, a district court may transfer any civil action to any other district
27
     or division where it might have been brought." 28 U.S.C. § 1404(a).
28
              In the Ninth Circuit, those factors include: (1) the location where the relevant agreements

- 6 -                                                          10cv0108

1    were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the

2    plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating

3    to the plaintiff's cause of action in the chosen forum; (6) the differences in costs of litigation in the two

4    forums; (7) the availability of compulsory process to compel attendance of unwilling non-party

5    witnesses; and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d

6    495, 498-99 (9th Cir. 2000).

7         Before discussing the Ninth Circuit factors, the court notes that the interest of justice is

8    served by transferring this action in light of the *McDaniel* and *Lamb* cases already pending in the

9    Northern District of Texas. Both cases allege substantially similar claims against the same

10   defendant and seek redress for a class of people over the same period of time. The record further

11   shows that the *Lamb* court recommends consolidation with *McDaniel*. Transferring this action to

12   the Northern District of Texas, therefore, would avoid duplicative litigation, further judicial

13   economy, and prevent the waste of resources.

14        Having weighed each of the aforementioned factors, noting especially factors three and

15   eight, the Court finds that this action should be transferred to the Northern District of Texas. With

16   regard to factor three, the Court grants less weight to the plaintiff's choice of forum. Although

17   Plaintiff is an individual and, therefore, her choice of forum must be given particularly appreciable

18   weight, her choice is not dispositive of the Section 1406(a) issue and cannot be used to completely

19   bar transfer of venue where, as here, substantial judicial resources will be saved and the fear of

20   inconsistent outcomes will be abated by transferring venue. *See, e.g., In re TS Tech USA Corp.*,

21   551 F.3d 1315, 1320 (Fed. Cir. 2008) (holding the lower court erred in giving "inordinate" weight

22   to plaintiff's choice of venue). Additionally, where as here, a plaintiff asserts his or her claims on

23   behalf of a class, a plaintiff's choice of forum is given less weight. *Lou v. Belzberg*, 834 F.2d 730,

24   739 (9th Cir. 1987). In weighing factor eight, it is likely that transferring venue may ease the

25   access to evidence and proof, as there is likely to be substantial overlap between the discovery in

26   this case and that in the *McDaniel* and *Lamb* lawsuits.

27        For the foregoing reasons, the Court finds that the interests of justice compel transferring

28   this action to the United States District Court for the Northern District of Texas.

**III.     Defendant's FRCP 12(b)(3) Motion was Properly Filed**

Plaintiff argues Defendant waived its right to bring the Motion because Defendant filed the Motion later in the day after filing its Rule 12(b)(6) motion to dismiss.

Federal Rule of Civil Procedure 12(g) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  One exception to this rule is a Rule 12(b)(6) motion to dismiss, as identified in Rule 12(h)(2).  This exception allows for a motion to dismiss for failure to state a claim to be filed at any time, even after a previous motion to dismiss has been filed.  *DSMC, Inc v. Convera Corp.,* 273 F. Supp. 2d 14 (D.D.C. 2002).  In this case, Defendant did not file a Rule 12(b)(6) motion to dismiss after the Motion, but rather filed its Rule 12(b)(6) motion to dismiss before the Motion.  The Court does not find the order of these motions dispositive.  It is clear from Rule 12(h) that, because a defendant may file a Rule 12(b)(6) motion to dismiss at any time, Defendant was permitted to first file the Rule 12(b)(6) motion and then file the Motion.  That these motions were not combined into a single motion is also not fatal, as Rule 12(g)(1) which provides "[a] motion under this rule *may* be joined with any other motion" is permissive and not mandatory. Fed. R. Civ. P. 12(g)(1) (emphasis added).

## CONCLUSION

Defendant's Motion to Dismiss for Improper Venue, or Alternatively, for Transfer to the Northern District of Texas is **GRANTED IN PART AND DENIED IN PART**.  Pursuant to 28 U.S.C. § 1406, the Court finds that transfer to the Northern District of Texas is appropriate. Therefore, the Clerk is directed to transfer the files of this case to the United States District Court for the Northern District of Texas.

**IT IS SO ORDERED**.

Date: June 2/, 2010

Hon. Roger T. Benitez
United States District Court Judge

- 8 -

10cv0108